IONUNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

GEORGE W. CONWAY
and ELLEN CONWAY,

Debtors.

Case Number: 24-10126-7

BRIAN A. HART, Chapter 7 Trustee,

Plaintiff,

v.

GREENWICH BUSINESS CAPITAL, LLC,

Defendant.

Adversary Number: 24-00034

## **MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR A PRELIMINARY INJUNCTION**

The Bankruptcy Code creates an automatic stay halting litigation against the debtor when a bankruptcy is filed. Typically, however, it does not stay actions against non-debtors. But the cases have long recognized that bankruptcy courts may enter preliminary injunctions that operate to stay actions against non-debtors and to enforce the automatic stay.

Plaintiff Brian Hart ("Plaintiff"), Trustee of George and Ellen Conway's ("George," "Ellen," and together, the "Debtors") Chapter 7 bankruptcy estate, seeks a preliminary injunction and enforcement of the automatic stay (the "Motion") against certain litigation and collection efforts by Defendant

Greenwich Business Capital, LLC ("Defendant"). Greenwich opposes the Motion.

**FACTS**

*Background*

Defendant loaned money to George's entity, Muldoon Dairy, Inc., in 2021.[1] George guaranteed the obligation.

Defendant later sued George and Muldoon Dairy in Kent County, Rhode Island, obtaining a default judgment on July 24, 2023, in the amount of $248,272.77 ("Judgment"). No judgment was entered against Ellen. Following entry of the Judgment in Rhode Island:

- ➢ August 8: Defendant filed a UCC Financing Statement that attached a copy of the Judgment with the office of the Dane County Register of Deeds.

- ➢ September 5: Ellen sold and conveyed her interest in real property located at 2201 Mica Road, Madison, Dane County, Wisconsin (the "Property") to a third-party purchaser.

- ➢ September 8: a correction instrument to the conveyance was filed to include any interest held by George in the Property.

In connection with the closing on the sale of the Property, Commonwealth Land Title Insurance Company ("Commonwealth") was asked to issue a title insurance policy, insuring against loss because of any defects in title to the

---

[1] *See Greenwich Business Capital, LLC v. Conway*, Adv. Proc. No. 24-25, Pretrial Statement of the Case, ECF No. 9.

Property. Defendant's UCC Financing Statement was identified as an adverse claim, defect, or encumbrance that needed to be insured against. The Debtors entered into a Secured Indemnity Agreement ("Agreement") with Commonwealth to insure against possible loss related to the asserted interest under the UCC Financing Statement. Under the Agreement, the Debtors placed $227,385.17 of the proceeds from the sale of the Property into an account held by Commonwealth. The Agreement gives the Debtors the right to receive the proceeds upon a judicial determination that the UCC Financing Statement is not a valid lien on the Property. The closing then occurred.

On November 17, Defendant docketed the Judgment in Dane County Circuit Court, Case No. 2023FJ39 ("Judgment Lien" case). On January 10, 2024, Defendant filed a non-earnings garnishment proceeding in the Judgment Lien case against Commonwealth demanding a turnover of the sale proceeds.

Defendant sued the parties involved in the sale of the Property on December 6. The suit includes the Debtors, the purchaser of the Property, and Commonwealth, among others, in Dane County Circuit Court, Case No. 23CV3203 (the "Wisconsin Action"). In the Wisconsin Action, Defendant seeks a declaratory judgment that it is entitled to the sale proceeds.

The Debtors filed their voluntary Chapter 7 petition on January 24, 2024. The same day, the Debtors filed notices of their bankruptcy in the Wisconsin Action and the Judgment Lien case. On January 26, Defendant objected to Commonwealth's answer in the Judgment Lien case. On February 5, Defendant filed a motion in the Wisconsin Action for leave to pursue

discovery from all non-debtor defendants, including Commonwealth, concerning the Judgment and the sale proceeds.

On February 21, Defendant filed another civil action in Kent County Superior Court, Rhode Island, Case No. KC-2024-0159 against Commonwealth (the "Rhode Island Action"). In the Rhode Island Action, Defendant claims that the UCC Financing Statement gives it the right to the sale proceeds.

Finally, Defendant also filed an adversary proceeding against the Debtors seeking nondischargeability of its claim, Adv. Proc. No. 24-25 ("Nondischargeability Adversary"). In that case, Defendant claims the Debtors committed fraud in obtaining the loan from Defendant, and that Debtors fraudulently transferred assets out of Muldoon Dairy.

At a hearing on the Motion, Plaintiff clarified the request for injunctive relief in the Nondischargeability Adversary. Plaintiff seeks relief limited to an injunction on a determination in that proceeding of the validity of the lien claimed against the funds held at Commonwealth. This case is, according to Plaintiff, the appropriate forum for such a determination.

*The Arguments of the Parties*

Plaintiff is seeking a determination of the validity of Defendant's asserted lien in the Debtors' bankruptcy case. The Motion requests an order enforcing the automatic stay based on alleged violations of the stay committed by Defendant. And it asks for preliminary injunctive relief prohibiting Defendant's continued litigation in the Wisconsin Action, the Judgment Lien action, the Rhode Island Action, and in the Nondischargeability Adversary.

4

Plaintiff points out that the Judgment Lien case explicitly asks for the proceeds of the sale of the Property be paid to Defendant. In other words, Defendant asks to obtain possession of property of the estate. The Wisconsin Action also demands a decision that it is entitled to payment of its Judgment because it was not paid the proceeds from the sale. In other words, the foundation for the claim is the asserted UCC Financing Statement and the purported lien it created.

In response, Defendant argues that the automatic stay does not prohibit continued litigation against non-bankrupt parties. Defendant says that it has not continued litigation against the Debtors in the Wisconsin Action, the Judgment Lien case, or the Rhode Island Action. It says that it has only pursued non-debtors in a limited manner. And it says the Nondischargeability Adversary properly concerns dischargeability and was filed within the deadline set by the Court. While that case does seek a determination of nondischargeability, it also seeks a determination that it is entitled to the sale proceeds.

Finally, Defendant contends that only enjoining it and no other parties in the state proceedings is inequitable and that it's inappropriate to enjoin proceedings against non-debtor third parties. Defendant insists that (1) Plaintiff doesn't have a likelihood of success on the merits, (2) Defendant's Rhode Island Action against Commonwealth is independent of the bankruptcy proceedings, and (3) Defendant will suffer harm if enjoined from continuing its litigation efforts.

**DISCUSSION**

*1. Legal Standard*

Bankruptcy courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Bankruptcy courts have exclusive jurisdiction over all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate. 11 U.S.C. § 1334(e). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir. 1994), or "the allocation of property among creditors." *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991); *see also Black v. United States Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) ("related to" means "likely to affect").

To protect this jurisdiction, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), including a stay. *Zerand-Bernal*, 23 F.3d at 162; *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998). "[A] bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm." *Fisher*, 155 F.3d at 882 (citing *In re L & S Indus., Inc.*, 989

6

F.2d 929, 932 (7th Cir. 1993). "Of course, the moving party must still establish a likelihood of success on the merits." *L & S Indus., Inc.*, 989 F.3d at 932.

   2. *Enforcement of the Automatic Stay*

The automatic stay of Section 362 of the Bankruptcy Code prohibits "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a)(2). It also prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(a)(3).

In turn, property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. 11 U.S.C. § 541(a)(1). Property of the estate is "broad and all encompassing." "It includes all kinds of property, tangible and intangible, causes of action, and all other forms of property." 5 COLLIER ON BANKRUPTCY ¶ 541.03 (16th ed. 2024).

> Even contingent rights of a debtor are property of the estate.
>
> Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include all of the debtor's interests, legal and equitable. The term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed . . . . A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate . . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.

*In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (internal quotations omitted).

7

The garnishment action filed in the Judgment Lien case demands turnover of the proceeds of the sale to Defendant. It was filed before the Debtors' bankruptcy case. However, continuation of it is an act to obtain possession of property of the estate. As a result, continuing the action is barred and prohibited by the automatic stay and it should be dismissed.

3. *Injunctive Relief is Appropriate*

Whether the proceeds may be subject to a valid, perfected lien is contingent on whether the UCC Financing Statement is a valid cloud on title; in other words, whether filing a UCC Financing Statement based on a judgment and not a security interest is a proper method of creating a lien based on a foreign judgment.

Plaintiff's adversary proceeding concerns that exact issue. And this Court is empowered to determine that issue. *See* 28 U.S.C. § 157(b)(2)(K) (bankruptcy judges may hear "core proceedings," including "determinations of the validity, extent, or priority of liens"). Enjoining Defendant's various state court proceedings is appropriate because they all involve or potentially affect the disposition of the sale proceeds, which the Debtors have a contingent interest in and is thus property of the estate and within this Court's jurisdiction.

Even though Defendant's Rhode Island Action against Commonwealth includes common-law claims of fraud and misrepresentation, the money at stake is the sale proceeds which the Debtors have a contingent interest in. There would be no claim against Commonwealth if there had not been a sale

8

and deposit of funds from the sale to address the possible lien created by the filing of a UCC Financing Statement.

The sale proceeds are central to the Rhode Island Action because the purpose of the Secured Indemnity Agreement is to address the potential title defect caused by Defendant's UCC Financing Statement and fund any litigation that stems from that possible defect. Thus, by continuing the Rhode Island Action, Defendant is attempting to circumvent this Court's jurisdiction and authority to determine the validity of Defendant's lien and the party entitled to the sale proceeds.

To reiterate, this Court has exclusive jurisdiction over property of the estate. 28 U.S.C. § 1334(e). And the automatic stay precludes "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. 362(a)(3). Only after this Court decides the validity and extent of Defendant's lien on the proceeds might Defendant be able to continue the Rhode Island Action and pursue its claims against Commonwealth. This is, however, a question for a different day.

In the same fashion, the Wisconsin Action and Judgment Lien case also seek to obtain the sale proceeds. Defendant asserts it is entitled to those proceeds and attempts to obtain them through a garnishment. This is designed to obtain property of the estate or in which the estate has an interest and to avoid a determination of the validity of its asserted lien.

While this case doesn't present identical facts to *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), it is more similar than Defendant contends. Like

9

*Fisher*, this case concerns whether the overlap between the Debtors' and Defendant's claims to the sale proceeds "are so closely related that allowing the [Defendant] to convert the bankruptcy proceeding into a race to the courthouse would derail the bankruptcy proceedings." *Fisher*, 155 F.3d at 883.

Here, Defendant has already raced to multiple courthouses seeking determinations that it is owed the sale proceeds based on an alleged secured claim. Whether they are secured (and thus have a right to the sale proceeds) is yet to be determined by any court. Decisions on the secured status of a creditor and the validity of its lien are core to bankruptcy cases. It directly affects property of the estate and its distribution.

And without making a final determination on Defendant's secured status, the Court is persuaded Plaintiff has a likelihood of success on the merits. In Wisconsin,

> [f]or a judgment to be capable of creating a lien, it must be rendered, perfected and entered. A judgment is rendered when it is signed by the judge. *See* Wis. Stat. § 806.06(1)(a). It is perfected when the costs are taxed and the amount inserted in the judgment, either before or after it is entered. Sec. 806.06(1)(c), (4). Entering a judgment involves two steps. The party must file the judgment in the clerk's office, § 806.06(1)(b), at which time the clerk must enter, or docket, the judgment in the judgment and lien docket, Wis. Stat. § 806.10(1) . . . . A judgment must be properly docketed to become a lien.

*Associated Bank, N.A. v. Collier*, 2013 WI App 1, ¶¶12, 14, 345 Wis. 2d 397, 824 N.W.2d 928 (Wis. Ct. App. 2012).

Nowhere in Wisconsin law does it appear that creation of a judgment lien can be accomplished by means other than section 806.06. Here, the funds held

10

by Commonwealth are the proceeds of the sale of the Debtors' home. Debtors have an interest in the sale proceeds. The sale happened after the filing of the UCC but before any foreign judgment was filed with the Dane County Clerk of Circuit Court. So the Property was not owned at the time of the filing with the Clerk of Circuit Court. Wis. Stat. § 806.15 says when a judgment has been properly entered in the judgment and lien docket, it shall be a lien on real property of the judgment debtor in the county where the judgment is filed, except that homestead property is exempt from execution to the extent provided by law. There is a substantial question, therefore, whether filing the Judgment with the Clerk of Circuit Court created a lien on the Property or its proceeds.

The record so far shows that Defendant did not docket the Judgment until after the Debtors sold the Property. Enforcing a judgment from another state is governed by section 806.24, Wis. Stat. That section says the foreign judgment is to be filed in the office of the clerk of circuit court in a county. Additionally, considering that Defendant docketed the Judgment in November 2023 and Debtors filed their bankruptcy petition in January 2024, the docketing of the Judgment might constitute an avoidable preference. In any event, Plaintiff has shown a reasonable likelihood of success.

## Conclusion

The Court is satisfied that the Wisconsin Action, Judgment Lien case, and the Rhode Island Action would defeat or impair its jurisdiction over the Debtors' case and property of the estate. *Fisher,* 155 F.3d at 882. The Court is

11

also persuaded that Plaintiff has a reasonable likelihood of success on the merits.

The injunctive relief sought by Plaintiff is appropriate as clarified with regard to the Nondischargeability Adversary. Whatever the outcome of the Trustee's action against Defendant, Defendant has a right to pursue its nondischargeability claim against the Debtors but not a determination of the validity of its lien in the Nondischargeability Adversary.

The garnishment action in the Judgment Lien case violates the automatic stay and should be dismissed.

This decision shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 19, 2024

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge