UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

GEORGE W. CONWAY
and ELLEN CONWAY,

           Debtors.

Case Number: 24-10126-7

---

BRIAN A. HART, Chapter 7 Trustee,

           Plaintiff,

v.

GREENWICH BUSINESS CAPITAL, LLC,

           Defendant.

Adversary Number:  24-00034

---

## DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Brian Hart is the Chapter 7 Trustee in George and Ellen Conway's bankruptcy. He filed an adversary proceeding against Defendant Greenwich Business Capital, LLC ("Defendant"). Trustee Hart seeks a declaratory judgment that a purported lien held by Defendant is invalid because Defendant failed to properly perfect and attach its foreign judgment against George Conway's (or Ellen Conway's) real estate or the proceeds from its sale. To the extent, if any, that Defendant had an interest in the sale proceeds, Trustee Hart requests avoidance of the lien as a preferential transfer. He also requests injunctive relief to stay various state court proceedings and confirm that the automatic stay applies to the sale proceeds while the Debtors' bankruptcy is pending.

The Court granted Trustee Hart's request for a preliminary injunction in large measure[1] and denied a contemporaneous motion to dismiss filed by Defendant. Trustee Hart now moves for summary judgment on the lien validity and avoidance issues. The Court agrees with Trustee Hart and grants his motion.

## FACTS

Defendant loaned money to Debtor George Conway's entity, Muldoon Dairy, Inc., in 2021.[2] George Conway personally guaranteed the loan. Ellen Conway did not.

In March 2023, George Conway quitclaimed his interest in real property located at 2201 Micah Road, Madison, Dane County, Wisconsin (the "Property") to Ellen Conway. Defendant later sued George Conway and Muldoon Dairy in Kent County, Rhode Island, obtaining a default judgment on July 24, 2023, in the amount of $248,272.77 (the "Rhode Island Judgment"). Ellen Conway was not a defendant, and no judgment was granted against her.

On August 8, Defendant filed a UCC financing statement ("UCC") attaching a copy of the Rhode Island Judgment with the Dane County Register of Deeds. The UCC identified George M. Conway as the debtor and Defendant as a secured creditor with an interest in the Property. There was no mortgage, security agreement, or RESA granted by either Debtor to Defendant.

---

[1] *See* Memorandum Decision and Order on Plaintiff's Motion to Enforce the Automatic Stay and for a Preliminary Injunction, ECF Nos. 24, 25.

[2] *See* Greenwich Business Capital, LLC v. Conway, Adv. Proc. No. 24-25, Pretrial Statement of the Case, ECF No. 9.

Ellen Conway then sought to sell the Property to a third party, Kristine Devilbiss. The UCC filed by Defendant was identified as a possible encumbrance. On September 5, as the sole titleholder, Ellen Conway conveyed her interest in the Property to Ms. Devilbiss. A correction was filed on September 8 to include the conveyance of any interest held by George Conway in the Property.[3]

Due to the uncertainty created by Defendant's UCC filing, Debtors entered into a Security Indemnity Agreement with Commonwealth Land Title Insurance Company ("Commonwealth"). Under the agreement, the Debtors delivered $227,316.52[4] of the proceeds from the sale of the Property to Commonwealth.

The agreement states that the proceeds "are agreed to be the property of Commonwealth while held by it enabling Commonwealth to insure against the Identified Risk[,]" *i.e.*, the UCC financing statement, and are "to be used for the benefit of Commonwealth and its insured(s)." The agreement goes on to state that "the [Debtors] acknowledg[e] that it is not an insured or a third-party beneficiary of a policy issued by Commonwealth, that the Funds are not its property, and its only interest in the Funds is a conditional right to receive all or the surplus of the Funds, if any, including any accrued but unused

---

[3] Defendant notes that the "correction instrument" was a warranty deed. *See* Defendant's Response, ECF No. 34, Exh. D-2.

[4] This figure appears in the parties' contract. In its discovery responses, Defendant states that the Debtors delivered $227,385.17, plus a $200 indemnity fee. *See* ECF No. 33, Declaration of Counsel for the Chapter 7 Trustee, Exh. A.

interest," after the "Identified Risk is paid, discharged, satisfied or removed from the title to Commonwealth's satisfaction."

Later, on November 17, Defendant docketed the Rhode Island Judgment in Dane County Circuit Court, Case No. 2023FJ39 (the "Foreign Judgment" case). In the Foreign Judgment case, Defendant filed a non-earnings garnishment proceeding against Commonwealth seeking a turnover of the sale proceeds. Then on December 6, Defendant sued the parties involved in the sale of the Property, including the Debtors, Ms. Devilbiss, and Commonwealth, among others, in Dane County Circuit Court, Case No. 23CV3203 (the "Wisconsin Action"). In the Wisconsin Action, Defendant seeks in part a declaratory judgment that it is entitled to the sale proceeds.

The Debtors filed their voluntary Chapter 7 petition on January 24, 2024. The same day, the Debtors filed notices of their bankruptcy in the Wisconsin Action and the Foreign Judgment case.

On February 21, Defendant filed another civil action in Kent County Superior Court, Rhode Island, Case No. KC-2024-0159, against Commonwealth (the "Rhode Island Action"). In the Rhode Island Action, Defendant claims that the UCC financing statement gives it the right to the sale proceeds. Defendant filed a secured claim in the Debtors' main bankruptcy case in the amount of $282,207.14.

At a pretrial hearing on August 8, the Court set a briefing schedule for dispositive motions. The Trustee filed his motion for summary judgment on

October 14, Defendant responded on November 12, and the Trustee replied on
November 25.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law." *Magin v. Monsanto Co.*, 420
F.3d 679, 686 (7th Cir. 2005) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322–23 (1986)). "[T]he plain language of Rule 56(c)
[incorporated herein by Fed. R. Bankr. P. 7056] mandates the entry of
summary judgment, after adequate time for discovery and upon motion,
against a party who fails to make a showing sufficient to establish the existence
of an element essential to that party's case, and on which that party will bear
the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The moving party bears the initial burden of demonstrating that these
requirements have been met; it may discharge this responsibility by showing
"that there is an absence of evidence to support the nonmoving party's case."
*Id.* at 325. To overcome a motion for summary judgment, the nonmoving party
must come forward with specific facts demonstrating that there is a genuine
issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
586 (1986). The existence of a mere scintilla of evidence, however, is
insufficient to fulfill this requirement. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251–52 (1986). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

Here, the parties agree that the issue is ripe for summary judgment. Although the Defendant introduces some "proposed additional undisputed facts" that the Trustee disputes in reply, the uncontested facts in this case are sufficient to decide the core of the dispute. The parties' joint pretrial statement, the facts laid out in the Trustee's motion that are undisputed by Defendant, and the submitted declarations of both the Trustee's and Defendant's counsel provide more than enough basis to rule on the matter.

DISCUSSION

Defendant concedes it did not docket the Rhode Island Judgment with the Dane County Circuit Court before the Debtors sold and transferred the Property to Ms. Devilbiss. But Defendant first argues that docketing a judgment isn't the only way to obtain a judgment lien in Wisconsin. Second, Defendant believes that it should be given an equitable lien on the sale proceeds. Finally, Defendant argues it obtained an equitable lien on the sale proceeds by commencing supplemental proceedings against the Debtors[5] after the sale. The Court will address each of these arguments in turn.

1. Obtaining a Judgment Lien in Wisconsin

Wisconsin Statute § 806.15 provides that:

---

[5] Debtor Ellen Conway is named as an "Other" party in the Foreign Judgment case. *See* Dane Cty. Cir. Ct., Case No. 23FJ39. The Rhode Island Judgment was only against Debtor George Conway and his entity, Muldoon Dairy, Inc., so how she was named in Wisconsin is certainly not because of any judgment against her.

Every judgment properly entered in the judgment and lien docket showing the judgment debtor's place of residence shall, for 10 years from the date of entry, be a lien on all real property of every person against whom the judgment is entered which is in the county where the judgment is rendered, except homestead property that is exempt from execution under s. 815.20, and which the person has at the time of the entry or which the person acquires thereafter within the 10-year period.

"A judgment must be properly docketed to become a lien." *Associated Bank N.A. v. Collier*, 2013 WI App 1, ¶ 14, 345 Wis. 2d 397, 824 N.W.2d 928 (*citing Builder's Lumber Co. v. Stuart*, 6 Wis. 2d 356, 364, 94 N.W.2d 630 (1959)); *see also Marine Bank West v. Ashton (In re Ashton)*, 1986 Bankr. LEXIS 7007, at *4 (Bankr. E.D. Wis. June 2, 1986) (noting that, although *Stuart* was based on former Wis. Stat. § 270.79, the language of that statute was "substantially the same as the operative language in § 806.15."). "In a race-notice jurisdiction such as Wisconsin, prompt docketing of judgments is needed to establish the proper priority of claims." *Collier*, 2013 WI App 1, ¶ 14 (citing *South Milwaukee Sav. Bank v. Barrett*, 2000 WI 48, ¶ 40, 234 Wis. 2d 733, 611 N.W.2d 448). The statutory lien of a judgment creditor "is notice to the world when docketed." *In re Hogan's Estate*, 229 Wis. 600, 605, 282 N.W. 5 (1938).

A creditor may have a valid judgment but, if not properly docketed, it does not become a lien. *See Builder's Lumber Co. v. Stuart*, 6 Wis. 2d at 365. This requirement applies to both domestic and foreign judgments. *See* Wis. Stat. § 806.24 (A foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating or staying

as a judgment of a circuit court of this state and may be enforced or satisfied in like manner.").

The process for obtaining a judgment lien in Wisconsin is thoroughly explained in the statute. The case law regarding judgment liens has repeatedly pointed toward its directives. It is the only *statutory* basis for obtaining a judgment lien on real property in the state. To the extent Defendant argues otherwise, it is wrong. Further, the permissive language in section 806.24 that Defendant emphasizes in its brief simply says that foreign judgment holders are not *required* to domesticate their judgments. They need do so only to pursue a lien.

The UCC filing did not create a judgment lien. Financing statements are creatures of the Uniform Commercial Code related to Article 9 secured transactions. In Wisconsin, the secured transactions provisions are in Chapter 409. Under that chapter, a "secured party" is:

1. A person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding;

2. A person that holds an agricultural lien;

3. A consignor;

4. A person to which accounts, chattel paper, payment intangibles, or promissory notes have been sold;

5. A trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest or agricultural lien is created or provided for; or

6. A person that holds a security interest arising under s. 402.401, 402.505, 402.711(3), 404.210, 405.118, or 411.508(5).

Wis. Stat. § 409.102(1)(rs).

A security interest is a property interest created by an agreement or operation of law to secure performance of an obligation. *Black's Law Dictionary*, 11th ed. (2019). Although the UCC limits creation of a security interest to personal property or fixtures, the Bankruptcy Code expands security interests to any "lien created by an agreement." 11 U.S.C. § 101(51).

Wisconsin law governs perfection. Wis. Stat. § 409.306(1). Perfection of a security interest by filing is required. Wis. Stat. § 409.306(1). It is a financing statement that is used to file and perfect a security interest. Section 409.502 contains the format requirements for a financing statement—the debtor's name, secured party's name, and a description of the collateral. Although the section no longer requires the debtor's signature, this does not mean that all filings are authorized. Instead, section 409.509(a) entitles a person to file an initial financing statement only if the debtor authorizes the filing. This presumes, however, that a security interest was granted.

Defendant is not a secured party. No security interest was created or provided for under a security agreement in its favor. It holds no agricultural lien, is not a consignor, a purchaser of accounts, a trustee or collateral agent, or a person holding a security interest under the applicable statutes. Neither was there a "lien created by an agreement." A judgment is not an agreement. It does not create a security interest. So, the UCC filing didn't create a security interest that was or could be perfected.

And Defendant concedes that it failed to file the Rhode Island Judgment on the Dane County judgment and lien docket before the Conways sold the Property to Ms. Devilbiss. Thus, Defendant did not have a statutory lien on the property when it was sold. It had no lien on the sale proceeds.

The later-filed Foreign Judgment case did not attach the Rhode Island Judgment to the Property since Ms. Devilbiss was not the judgment debtor, nor to the sale proceeds, since the proceeds are not "real property." *See* Wis. Stat. § 806.15 ([J]udgments entered on the judgment and lien docket shall "be a lien on all *real property* of every person *against whom the judgment is entered.*") (emphasis added).[6]

2. <u>Defendant Is Not Entitled to An Equitable Lien</u>.

Defendant didn't have a statutory lien on the Property when it was sold. Nonetheless, Defendant argues that it is entitled to equitable remedies. It argues that it is entitled to an equitable lien on the Property due to alleged representations made by the Conways, Ms. Devilbiss, and the closing agent involved with the sale. Defendant also believes that the parties to the transaction should be "equitably estopped from denying that they permitted [Defendant] a lien on the [Property]."

To support its equitable arguments, Defendant first points to *Mann v. Bankruptcy Estate of Badger Lines, Inc. (In re Badger Lines, Inc.), 2*24 Wis. 2d 646, 654, 590 N.W.2d 270 (1999), and *Associated Bank N.A. v. Collier*, 2014 WI

---

[6] And Ellen Conway was not a judgment debtor. Thus, there was no lien on any of her real property.

62, ¶ 57, 355 Wis. 2d 343, 852 N.W.2d 443. *Badger Lines* involved a certified

question from the Seventh Circuit Court of Appeals of whether a creditor who

initiates supplementary proceedings under Wisconsin Chapter 816 must do

more than serve a debtor with notice to appear to obtain a superior lien over

another creditor. 224 Wis. 2d at 649. The court answered in the affirmative,

holding that a creditor's lien is valid and superior against other creditors at the

time the creditor serves the debtor with a summons to appear at a

supplementary proceeding. *Id.* at 660–61.

But the Wisconsin Supreme Court clarified its *Badger Lines* ruling in the

*Collier* case.[7] It explained that in *Badger Lines*, the court assumed (as did the

certified question) that the judgment creditor *had* a lien, priority

notwithstanding. The court then addressed a series of opinions relating to

when a lien may arise, and to which *personal* property such a lien may attach.

Returning to *Badger Lines*, the court clarified and emphasized that "[d]ocketing

a creditor's judgment is a condition precedent to establishing the priority of a

judgment creditor's interest because a judgment must be docketed before an

---

[7] *Collier* frames *Badger Lines* as a decision involving a contest over "perfection" decided "without a full record." As noted by the Trustee in reply, the bankruptcy court for the Eastern District of Wisconsin recently wrote that while *Collier* doesn't necessarily overrule *Badger Lines*, "[its] attempt to reconcile its reasoning" with *Badger Lines* "is difficult to square with the earlier decision[.]" *Greenpoint Asset Mgmt. II LLC v. Hallick (In re Greenpoint Asset Mgmt. II, LLC)*, 646 B.R. 264, 271 (Bankr. E.D. Wis. 2022).

execution against the property of a judgment debtor can issue." *Collier*, 2014 WI 62, ¶ 42.[8]

Defendant construes these opinions to stand for the proposition that creditors' liens may be created in equity. But while the Wisconsin Supreme Court acknowledges that creditors *may* be granted equitable liens, it goes to great lengths to explain that it is the exception rather than the rule. Even then, the court repeatedly emphasized that an equitable interest will not defeat the interest of a properly secured judgment creditor, such as a Chapter 7 trustee. *Collier*, 2014 WI 62, ¶ 45; 11 U.S.C. § 544(a)(1).

Yet, Defendant goes on to argue that equitable considerations, including equitable estoppel under Wis. Stat. § 706.04,[9] support granting a lien on the Property in its favor. Defendant claims that all parties involved in the sale of the Property knew that Defendant had a judgment against the Debtors. Defendant also claims that the settlement agent involved in the transaction requested and received a payoff statement of Defendant's claim, and informed Defendant that its claim would be paid at closing. Overall, Defendant believes that the balance of equities favor giving it an equitable lien on the proceeds because the Conways, Ms. Devilbiss, and the closing agent "implicitly acknowledged [Defendant's] right" to payment from the proceeds of the sale.

---

[8] Note that both *Badger Lines* and *Collier* involved common law lien perfection and executions on personal property, not real property, as is the case here.

[9] Defendant cites the statute in part: "A transaction . . . may be enforceable . . . under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and . . . [t]he party against whom enforcement is sought is equitably estopped from asserting the deficiency."

Defendant's appeals to equity and estoppel are unavailing. Neither the Conways, Ms. Devilbiss, nor the settlement agent involved in the transaction owed any duty to Defendant. The existence of a UCC financing statement merely identified a risk but not that there was actually an enforceable lien. None of the parties to the transaction were required to notify Defendant of the need to docket its judgment with the Dane County Circuit Court to obtain a judgment lien. It was Defendant's sole responsibility to ensure that it attached and perfected its judgment against the Property prior to the sale.[10]

Further, the Court agrees with the Trustee that none of the alleged representations, omissions, or misguided advice that may have been given to Defendant by anyone protects Defendant's alleged interest in the Property or the proceeds from the Trustee's rights as a lien creditor under the Code. 11 U.S.C. § 544 (Trustee shall have the rights of a judgment lien creditor "without regard to any knowledge of the trustee or of any creditor."); *see also Springer v. Okaw Truss, Inc. (In re Top Flight Stairs & Rails, Ltd.)*, 398 B.R. 321, 324 (Bankr. N.D. Ill. 2008) ("Because the debtor's conduct is not binding, it is well-

---

[10] Defendant's counsel's Declaration, ECF No. 34, Exh. D-5, includes an affidavit from Attorney Christopher Mulhearn filed in Dane Cty. Case No. 23CV3203. The affidavit states that, based on a conversation with an agent at "Land Title Services and Land Closing Services," Atty. Mulhearn "actually and reasonably believed" that Defendant's judgment would be paid at closing. Nothing in the affidavit indicates that the agent was an attorney, or that they owed any duty to Defendant to ensure that they had a right to the proceeds. To the contrary, it was the duty of Defendant's counsel to ensure his client's interests were protected. Rhode Island also has the Uniform Enforcement of Foreign Judgments Act requiring that a foreign judgment must be filed in the appropriate superior or district court. R.I. Gen. Laws § 9-32-2 (2024).

established that an estoppel defense premised on the debtor's conduct cannot be asserted to a trustee's preference or fraudulent transfer claims.").

Defendant's attempts to obtain a judgment lien by claiming equitable rights are untimely and without merit. "Fashioning equitable solutions to mitigate the hardship of [statutory] requirements on particular creditors undermines [the system's] purpose . . . . [R]elaxing [statutory] requirements does not . . . justify the uncertainty and inconsistency that would result from such an approach." *Collier*, 2014 WI 62, ¶ 50 (quoting *Smith & Spidahl Enters. v. Lee*, 206 Wis. 2d 663, 673, 557 N.W.2d 865 (Wis. Ct. App. 1996)). Moreover, "[e]quity has a well-known maxim that equitable relief will be denied to a complainant who has slept on his rights." *Werner v. Hendree*, 2011 WI 10, ¶ 86, 331 Wis. 2d 511, 795 N.W.2d 423 (W. Bradley, J., dissenting) (citing *Visser v. Koenders*, 6 Wis. 2d 535, 538, 95 N.W.2d 363 (1959)); *see also State ex rel. Coleman v. McCaughtry*, 2006 WI 49, ¶ 25, 290 Wis. 2d 352, 714 N.W.2d 900 ("equitable remedies are not available to one whose own inaction results in the harm").

Defendant had the opportunity to file its judgment with the Dane County Circuit Court. Instead of researching the requirements needed to obtain a judgment lien, Defendant's counsel says he took a non-attorney closing agent's request for a payoff and a purported statement a payment would be made at closing as a guarantee of payment and failed to preserve his client's interests. The sole cause of any lack of a lien was the failure of Defendant and its attorney to follow the statutory requirements to obtain a judgment lien. It could

have done so before any sale as demonstrated by its filing of a UCC in August.
Defendant and its lawyer chose to ignore the requirements of the statutes.
Defendant cannot now claim that it is entitled to equitable relief when it failed
to timely follow the statutory process for properly obtaining a judgment lien.

   3. <u>Defendant's Supplemental Proceedings Do Not Justify an Equitable Lien.</u>

   In a last-ditch effort, Defendant claims that by filing the Foreign
Judgment case in November 2023, it obtained an "unsecured, inchoate
interest" in the Debtors' personal property, including the sale proceeds. ECF
No. 35, p. 5 (citing *Collier*, 2014 WI 62, ¶ 23). Defendant points to *Badger Lines*
for support, but nonetheless concedes that any interest it obtained in the
Foreign Judgment case would be within the 90-day preference period of the
petition date.

   Defendant's reliance on *Badger Lines* fails for the reasons stated above:
that an equitable interest will not defeat the interest of a properly secured
judgment creditor. In fact, Defendant's argument is like the creditor's argument
in the *Collier* case before it reached the state supreme court. Indeed, in the
court of appeals, the creditor invoked *Badger Lines* to argue that since it was
the first judgment creditor to serve the debtor with supplemental proceedings,
it should be awarded a superior lien. But the court noted that "[t]he clear
difference in *Badger Lines* is that the creditor claiming priority had a docketed
judgment." *Collier*, 2013 WI App 1, ¶ 15 (citing *Badger Lines*, 224 Wis. 2d at
649–50). Moreover, the court of appeals affirmed that "a properly docketed, or
executable judgment was essential because if the underpinning for the

[supplemental] proceeding fails the proceeding itself necessarily fails." *Collier*, 2013 WI App 1, ¶ 15 (internal quotations omitted).

Defendant didn't have a lien on the Property when it was sold. So to the extent that Defendant argues that the later-filed Foreign Judgment case should give it an equitable lien on the Property or the proceeds, Defendant is mistaken. Defendant cannot invoke equitable remedies after it squandered the statutory procedure for obtaining a judgment lien.

4. <u>Any Claim to Payment as an Equitable Lien Would be an Avoidable Preference</u>.

Even if the Foreign Judgment case gave Defendant an interest in the Property or the proceeds (which it didn't), such an interest would have occurred within the 90-day preference period. Since the Debtors filed bankruptcy on January 24, 2024, the preference period began on October 24, 2023. 11 U.S.C. § 547(f). Defendant didn't file the Foreign Judgment case until November 17.

Thus, in any case, the Trustee can avoid Defendant's alleged interest in the proceeds as a preferential transfer. Trustees in bankruptcy can avoid preferential transfers when such transfer is (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition; and (5) enables such creditor to receive more than such creditor would receive in a Chapter 7 case if the preferential transfer had not been made. 11 U.S.C. § 547(b).

16

Each of these elements is met here. The Foreign Judgment case would have been for Defendant's benefit on account of an antecedent debt, made while the Debtors were insolvent,[11] within 90 days of the petition date, and that would enable Defendant to receive more than it would in a hypothetical Chapter 7 case. So, even if Defendant was correct that the Foreign Judgment case gave it some interest in the sale proceeds, it is an avoidable preference.

### CONCLUSION

The Court GRANTS Trustee Hart's Motion for Summary Judgment.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: December 19, 2024

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge

---

[11] Debtors' most recent summary of assets and liabilities (Case No. 24-10126, ECF No. 36), showed that, on the petition date, Debtors had about $282,551 in total assets and $1,602,557 in total liabilities. Their liabilities included $605,097.19 owed to the Small Business Administration for a business debt, $238,671.62 owed to "RFS Cheese," also for a business debt, and $248,272 owed to Defendant. These debts are consistent with earlier filed schedules (*see id.*, ECF No. 22), even though Debtors' counsel failed to acquire signatures and miscalculated Debtors' total assets and liabilities. The SBA also filed a claim in this case totaling $456,217.35 (*id.*, Claim No. 13), along with 20 other creditors filing claims in a total amount of well over $200,000. *Id.*, Claim Nos. 1–12, 14–21. This Court is satisfied that Debtors were insolvent when the Foreign Judgment case was filed.